Solomon S. Zwerdling and Another, Judgment Debtors, *v.* Hamman Building Corporation and Others, Judgment Creditors.

Supreme Court, Kings County, August 17, 1932.

*Myron Wisoff,* for the judgment debtor Samuel Singer.

*Victor Whitehorn,* for the judgment creditors.

Cuff, J. This is a motion to set aside a subpœna issued by the attorney for the judgment creditors under the authority of section 773-a of the Civil Practice Act.

The first objection is directed to the form of the subpœna. It is urged that the stock phrase " office and post office address " is omitted. The statute provides: " It must be subscribed in the name of the attorney for the judgment creditor and with his office address, specifying a place within the state where there is a post office."

The subpœna was subscribed as follows:

" Victor Whitehorn,
" Attorney for judgment creditors,
" 26 Court Street,
" Brooklyn, N. Y."

It is subscribed " in the name of the attorney for the judgment creditor," sets out " his office address," and specifies " Brooklyn, N. Y.," which is " the place within the state where there is a post office." It conforms to the statute.

The second objection is that execution was not issued. The judgment creditors rely on section 773-a of the Civil Practice Act, which, they say, makes issuance of execution unnecessary. Defendants argue that section 775 of the Civil Practice Act requires such a step preliminary to questioning a judgment debtor about his property. That section provides: " * * * in order to entitle a judgment creditor to maintain either of the special proceedings authorized by this article, * * * *execution must have been issued* out of a court of record; * * *."

Section 773-a is in direct conflict with that language. It provides: " * * * The attorney for the judgment creditor may * * *, *whether or not execution has or has not been issued thereon,* issue a subpœna directed to the judgment debtor requiring his appearance for examination concerning his property."

This section was enacted by the Legislature of 1932 (Chap. 452) and became a law on March 28, 1932. Section 775 was amended in 1932 by the same Legislature (Chap. 584). That amendment was entirely unrelated to the provision in section 775 with reference to issuing execution. The amended part of the section is to take effect September 1, 1932. Counsel for the judgment debtor maintains that the entire section (775) will go into effect on that date. He points to the fact that the whole section was before the 1932 Legislature and the whole section became a law " to take effect September first, nineteen hundred and thirty-two." He contends that all of section 775 was re-enacted by the 1932 lawmaking body, and as it becomes effective at a date later than the enactment of section 773-a, the latter is repealed in so far as it is inconsistent with section 775. The court cannot agree with this. To begin with, the claim of the judgment debtor must be dismissed on the argument of his attorney. If section 773-a is repealed by the amending or re-enacting of section 775, then section 773-a is effective now, for the " new " section 775 is not yet in force. It " takes effect September first, nineteen hundred and thirty-two."

Passing from this refinement to the broader question: Will the provisions of section 773-a " whether or not execution has or has not been issued " be repealed on September 1, 1932? It must be held that section 773-a will survive. The new parts added to section 775 do not disturb section 773-a, which dispenses with issuing execution and empowers attorneys to require the presence of the judgment debtor for questioning without the tedious performance of obtaining an order of court.

Counsel is in error when he contends that section 775 was re-enacted to take effect September 1, 1932. It is true that the Legislature had before it the entire section. The bill carried the

notation that italicized words were new, bracketed words were to be omitted. The rules of the Legislature provide that each bill be in that form and so labeled (Rules of the Assembly, rule 8; Rules of the Senate, rule 22). The words in italics or brackets were the only words acted upon by the 1932 Legislature. The other words in the section were not affected. They appeared in the bill before the Legislature in order that the changes contemplated might be understandable. It must be held that when the amendment to section 775 becomes effective on September 1, 1932, it will not affect the provisions of section 773-a as to dispensing with issuing execution. If there were any doubt about it, there is another reason.

The collection of judgments from cunning, evasive judgment debtors has been cumbersome and ineffective. It has been the curse of the practice of the law. The need for a change has been apparent for a long time. The Legislature of 1932 took one step to improve a deplorable situation. It was a mighty step. It said to judgment creditors in effect: " You no longer have to go to the needless expense of issuing execution and paying the sheriff his fees for a mere gesture. You no longer have to draw voluminous documents, sworn to before notaries, upon which to base an order to be signed by a judge. You no longer have to obtain and serve on the judgment debtor a copy of that order. We realize that all of this is expensive to the party who has the judgment and that dishonest debtors make use of the valuable time necessary to do all these things to dispose of their property. We want you to have the opportunity, now that you have the judgment, to question that judgment debtor as to his property immediately after such judgment is recovered to prevent the defeat of justice. And to make it still easier, we do away with the execution, the affidavits, the order, and the service of a copy. Your attorney may issue his subpœna ' at any time within two years from the recovery of such judgment.' It may be served on the judgment debtor without payment of witness' fees and his failure to obey visits upon him punishment for contempt of court, the same as if he had disregarded an order signed by a judge."

Who could ever seriously contend that such a sensible improvement in the practice — one awaited for years — would be enacted to remain in effect from March 28 to September 1, 1932?

While on the subject, may I point out that the relief granted by the 1932 Legislature does not go far enough. Legislation should be enacted which would automatically, on the rendering of a verdict by a jury or a decision by a court in actions at law, stay the loser from disposing of or transferring any of his property unless allowed to do so by his creditor's consent or an order of court upon notice.

The burden would then be where it belonged — on the one who owes the money.

Another improvement would be to do away with the supplementary proceedings entirely — require plaintiff and defendant to be in court when a verdict or decision is to be announced. In inquests and defaults subpoena defendant. Non-appearance should be punishable as a contempt of court. The loser should immediately be sworn and examined by the court and opposing counsel as to his property and ability to pay the judgment to be entered. Some will readily object to this procedure on the ground that the trial judge should not be required to actually preside at such an examination. This is only because we have grown used to the theory that an action at law ends with the entry of judgment. It should not end until all the processes and instrumentalities of the court have been employed to put the money in the purse of the successful party. The examination could be avoided upon filing a bond or obtaining the creditor's consent. The questioning as to the property of the unsuccessful party would not take long if conducted in the presence of the trial judge and with his active co-operation. Even if it consumed some additional time, it would be worth while, for it would be moving toward the end the litigant had in view when he started the suit, to wit, to obtain money. As a matter of fact, the time required for his examination would be compensated for by the elimination of all the motions incidental to the supplementary proceedings in which the judgment creditor vainly attempts to collect his just deserts. Volumes of typing would be saved; days and weeks of the time of attorneys, who now are required to carry on their examinations without the presence or aid of the court, would be spared for other gainful work. The palpable lying that is typical of the supplementary proceeding inquiry would be greatly reduced or perhaps eliminated, for obvious lying is not nearly as likely to be perpetrated before an organized court as it is in the corner of the examination room with no judge, clerk or stenographer present. There is room for more improvement in this direction.

I must apologize for referring to these matters in this opinion. I do so to bring the subject before the bar in a form where it will create discussion.

The motion to vacate the subpoena is denied.