The **FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff,**

v.

**John ANTONIO, et al., Defendants.**

**Civ. A. 85–C–1298.**

United States District Court,
D. Colorado.

Dec. 16, 1986.

G. Robert Blakey, McGuire, Cornwell & Blakey, Denver, Colo., for plaintiff.

Ann Rice, M. Michael Miller, Martin D. Buckley, Bruce D. Pringle, Michael F. Scott, Denver, Colo., for defendants.

## MEMORANDUM ORDER ON PRELIMINARY INJUNCTION

CARRIGAN, District Judge.

This is an action by the Federal Deposit Insurance Corporation (FDIC) seeking to recover substantial funds diverted from the Aurora Bank as the result of an alleged scheme by certain of the defendants to defraud the bank in violation of the Racketeer Influenced and Corrupt Organization Act, Title IX, 18 U.S.C. § 1964 . et. seq. ("RICO") and the Colorado Organized Crime Act, C.R.S. § 18–17–106 et. seq. ("COCCA"). The FDIC asserts twenty-nine claims against the various defendants, some of whom, according to the FDIC, drained the bank's assets through an extensive pattern of fraudulent conduct and breaches of fiduciary duties. The most significant act of fraud allegedly committed on the bank was a "heist money" scheme to use $3,000,000.00 of the bank's assets in an attempt to purchase $9,000,-000.00 in stolen currency.

Plaintiff's Motion for Temporary Restraining Order was granted on November 21, 1986. At that time I also issued prejudgment writs of attachment to preserve the status quo. On November 28, 1986, a hearing was held on the plaintiff's Motion for a Preliminary Injunction. By that motion the plaintiff sought to enjoin certain defendants, pending trial on the merits, from disposing of or dissipating assets. The targeted assets fall into two categories: (1) assets the plaintiff claims were fraudulently obtained through the transactions giving rise to this lawsuit, and (2) other assets of the defendants which the plaintiff seeks to freeze in order to assure their availability to pay any judgment it may obtain in this action.

I have now reviewed voluminous briefs and numerous exhibits, have studied deposition testimony and have heard over four hours of testimony on the issues raised at the preliminary injunction hearing. This memorandum constitutes my preliminary findings of fact and conclusions of law as required by Rule 52(a), Fed.R.Civ.P.

### A. *Availability of Injunctive Relief.*

A threshold issue is whether equitable relief is available to the FDIC as a private party plaintiff pursuant to either RICO or COCCA. Congress, in the RICO statute, did not expressly provide injunctive relief

in actions by private parties. Instead, 18 U.S.C. § 1964(c) provides:

Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

Courts must be careful not to infer a right of action or remedy that Congress has not expressly created or clearly implied. *Religious Technology Center and Church of Scientology International, Inc. v. Wollersheim,* 796 F.2d 1076, 1088 (9th Cir.1986). This is especially true where, as here, the statute in question expressly grants injunctive power in suits brought by the Attorney General, but omits any mention of injunctions in the provision authorizing suits by private parties.[1]

The meager authority available is in conflict as to whether injunctive relief is available to private party plaintiffs in RICO actions. The Ninth Circuit has held such relief is not available. *Id.* The Second and Fourth Circuits have implied, but not held, that injunctive relief is probably not available. *See Trane Co. v. O'Connor Securities,* 718 F.2d 26 (2d Cir.1983); *Dan River, Inc. v. Icahn,* 701 F.2d 278 (4th Cir.1983). In *Bennet v. Berg,* 685 F.2d 1053 (8th Cir.1982), the Eighth Circuit hinted that injunctive relief may be available. No appellate court has expressly decided that the civil RICO statute permits a private party to obtain injunctive relief. Moreover, the district courts that have spoken are divided on the question. *See Miller v. Affiliated Financial Corp.,* 600 F. Supp. 987 (N.D.Ill. 1984) (injunctive relief is not available); *Aetna Casualty and Surety Co. v. Liebowitz,* 570 F.Supp. 908 (E.D.N.Y.1983) (injunction is available); *Chambers Development Co. v. Browning Ferris Industries,* 590 F.Supp. 1528 (W.D.Pa.1984) (injunction is available).

■ In the instant case, the FDIC also relies on COCCA which, in contrast to RICO, expressly provides for injunctive relief in private party cases.[2] Thus the FDIC is entitled to injunctive relief under COCCA if its evidence has established the factors necessary to support a preliminary injunction. Those factors are: (1) that there is a substantial likelihood the FDIC will succeed on the merits, (2) that the threatened injury to the FDIC outweighs whatever damage the injunction may cause the defendants, and (3) that the public interest will not be adversely affected.[3] It is not necessary therefore, for purposes of this motion, to reach the question of whether Congress intended to make equitable relief available to private party plaintiffs in RICO actions.

■ A further issue raised by several defendants is whether this court, under any

1. Section 1964(b) provides:
   The Attorney General may institute proceedings under this section. In any action brought by the United States under this section, the court shall proceed as soon as practicable to the hearing and determination thereof. Pending final determination thereof, the court may at any time enter such *restraining orders* on prohibitions, or take such other actions, including the acceptance of satisfactory performance bonds, as it shall deem proper. (emphasis added).

2. Section 18–17–106(6) provides:
   Any aggrieved person may institute a proceeding, under subsection (1) of this section. In such proceeding, relief shall be granted in conformity with the principles that govern that granting of injunctive relief from threatened loss or damage in other civil cases; except that no showing of special or irreparable damage to the person shall have to be made. Upon the execution of proper bond against damages for an injunction improvidently granted and a showing of immediate danger of significant loss or damage, a temporary restraining order and a preliminary injunction may be issued in any such action before a final determination on the merits.

3. *Lundgrin v. Claytor,* 619 F.2d 61 (10th Cir. 1980). Plaintiff is not required to also demonstrate special or irreparable damage to obtain injunctive relief under COCCA. C.R.S. § 18–17–106(6). However, if injunctive relief is to be granted pursuant to the inherent equity powers of this court, the FDIC must show that it will suffer irreparable injury if the injunction does not issue.

authority, has the power, by preliminary injunction, to prevent dissipation of the defendants' assets necessary to satisfy a judgment that may be entered in the future, absent proof that those assets are the fruit of the wrongdoing that gave rise to this action. Assuming the predicate for an injunction is established, considerable authority exists for enjoining dissipation of assets to preserve the status quo. *See, e.g., Foltz v. U.S. News & World Report,* 760 F.2d 1300 (D.C.Cir.1985); *USACO Coal Co. v. Carbomin Energy, Inc.,* 689 F.2d 94 (6th Cir.1982); *Itek Corp. v. First National Bank of Boston,* 511 F.Supp. 1341 (D.Mass.1981); *S.E.C. v. General Refractories Co.,* 400 F.Supp. 1248 (D.D.C.1975).

Because different defendants, or categories of defendants, were involved in different conduct, it is necessary to consider each defendant and category separately to decide whether an injunction is appropriate.

### B. *Defendants John Antonio, Angelo Carnemolla, Fuad S. Jezzeny, Jilly Rizzo and Gary F. Thomas.*

Defendants Antonio, Carnemolla, Jezzeny, Rizzo, and Thomas were all properly and timely served with a summons, the verified amended complaint, this court's temporary restraining order and a subpoena commanding appearance at the November 28, 1986, preliminary injunction hearing. These five failed to appear or otherwise respond or defend against the FDIC's allegations. Plaintiff's Motion for a Preliminary Injunction is granted as to these five defendants.

### C. *Defendants Fuad C. Jezzeny and William J. Vanden Eynden.*

Fuad C. Jezzeny has stipulated through deposition testimony that he does not object to entry of the preliminary injunction against him. Vanden Eynden has not opposed the plaintiff's motion. No harm would result from entry of an injunction against him since his attorney, through affidavit, states that Vanden Eynden has no assets. Plaintiff's Motion for a Preliminary Injunction is granted as to these two defendants.

### D. *Defendants John A. Napoli, Jr. and Heinrich F. Rupp.*

Defendants Napoli and Rupp have invoked the Fifth Amendment rather than testify. Under the adverse inference rule, the strongest inferences may be drawn from these failures to challenge the evidence presented by the FDIC. *Mammoth Oil Co. v. United States,* 275 U.S. 13, 52, 48 S.Ct. 1, 10, 72 L.Ed. 137 (1927); *United States v. Feeney,* 501 F.Supp. 1324, 1326–27 (D.Colo.1980). As to Napoli, the FDIC's evidence is overwhelming and relates to his central role in the heist money scheme. Moreover, he has apparently undertaken a systematic effort to hide his assets in secret bank accounts and has obtained a sham divorce, then conveyed assets to his former wife and other relatives. The evidence as to the defendant Rupp relates to his active involvement in the heist money scheme, conversion of the bank's funds and subsequent fraudulent conveyances.

I find and conclude that the FDIC has demonstrated a substantial likelihood of success on the merits as to its claims against Napoli and Rupp. The threatened injury to the FDIC through continued dissipation of assets is serious and so substantial that it outweighs any damage the injunction may cause Napoli and Rupp. The FDIC's Motion for a Preliminary Injunction is granted as to the defendants John A. Napoli, Jr. and Heinrich F. Rupp.

### E. *Defendant Anthony Del Vecchio.*

Plaintiff alleges that Del Vecchio participated in the heist money scheme by fraudulently obtaining a $175,000.00 loan from the bank to help fund the heist. The supposed collateral for the loan had little or no value. The FDIC further alleges that Del Vecchio and defendant Rizzo have attempted to hinder creditors and hide the proceeds of their fraudulent activity through a series of fraudulent conveyances of land located in Echo Lake, Pennsylvania.

Del Vecchio has appeared pro se in this action and testified at the November 28, 1986 hearing. I find that, as to those questions to which he did not respond by invoking the Fifth Amendment, Del Vecchio's

responses to these allegations lacked credibility.

I find and conclude, based on the evidence presented, that the FDIC has demonstrated a substantial likelihood of success on the merits of its claims against the defendant Del Vecchio. Moreover, I find and conclude that irreparable harm will result if he is allowed to further dispose of his assets. Since Del Vecchio states that he is without sufficient assets to satisfy judgments already outstanding against him, he will suffer little, if any, injury if the requested injunction is granted. The public interest will in no way be harmed by granting the injunction as to Del Vecchio or any other defendant named in the plaintiff's motion.

### F. *Defendants Gilbert Beall and Frederic Mascolo.*

Plaintiff alleges that the Echo Lake property was fraudulently conveyed by Del Vecchio and Rizzo, for inadequate consideration, to the defendants Beall and Moscolo. Del Vecchio and Rizzo have retained a one-third interest in the profits expected from development of the Echo Lake property.

The purpose of injunctive relief is to preserve the status quo pending a trial on the merits. *Penn v. San Juan Hospital*, 528 F.2d 1181 (10th Cir.1975). To the extent that transactions relating to the Echo Lake property are the fruit of earlier fraud upon the Aurora Bank or are efforts by Del Vecchio and Rizzo to hide their assets from a future judgment, it is necessary that any further transactions involving the Echo Lake property be approved by this court to guarantee that any sale proceeds are not dissipated.

Plaintiff's Motion for a Preliminary Injunction is granted as to the defendants Beall and Moscolo, but only with respect to their respective interests in the Echo Lake property.

### G. *Defendant Aaron Mosko.*

The FDIC has demonstrated a substantial likelihood of success on the merits of its claims that the defendant Aaron Mosko conspired to violate the provisions of RICO and COCCA. I find on a preliminary basis that Mosko participated in the heist scheme by loaning $50,000.00 to Vanden Eynden purportedly to fund a "gold deal." Mosko borrowed the $50,000.00 from the Bank and then immediately transferred it by cashier's check to Vanden Eynden. The loan itself was a direct fraud on the bank, being a loan to Vanden Eynden disguised as a loan to Mosko.

Although Mosko contends that he knew nothing of the heist scheme, his deliberate ignorance cannot be used to disclaim knowledge of the scheme's precise nature.

> While negligence is not sufficient to charge a person with knowledge, one may not willfully and intentionally remain ignorant of a fact, important and material to his conduct and thereby escape punishment. The test is whether there was a conscious purpose to avoid enlightenment. *Greigo [Griego] v. United States*, 298 F.2d 845, 849 (10th Cir. 1962).

Mosko helped divert $50,000.00 of the Bank's funds to Vanden Eynden for a promised return of $100,000.00 in 30 days, no questions asked. Mosko was willfully blind, at least, to the scheme's details beyond the loan's initial illegality, and he thereby became a member of the conspiracy then in progress to defraud the Bank, thus violating 18 U.S.C. § 1962(d) and C.R.S. § 18–17–104(4). I further find on a preliminary basis that Mosko's explanations with regard to subsequent conveyances of property for little or no consideration fail to ring true. Although he estimated, on a personal financial statement submitted to the Bank in July, 1984, that his net worth exceeded $1,000,000.00 he now claims he is penniless. If Mosko is indeed currently without assets, he will suffer no harm from entry of the requested injunctive relief against him.

Plaintiff's Motion for a Preliminary Injunction is granted as to Aaron Mosko.

Accordingly,

IT IS ORDERED that pursuant to the Colorado Organized Crime Control Act, C.R.S. § 18–17–106(6) and the inherent eq-

uitable powers of this court, the plaintiff's Motion for a Preliminary Injunction is granted as to the defendants John Antonio, Angelo Carnemolla, Faud S. Jezzeny, Jilly Rizzo, Gary F. Thomas, Fuad C. Jezzeny, William J. Vanden Eynden, John A. Napoli, Jr., Heinrich F. Rupp, Anthony Del Vecchio and Aaron Mosko. IT IS FURTHER ORDERED that:

(1) If they have not already done so, each defendant shall forthwith fully and accurately account for and disclose by affidavit to a Special Master to be appointed by this court, all business, property, assets and choses in action, wherever located, owned by each defendant, or in which each defendant is employed, has an interest, or which is held for his benefit. Copies of the affidavits shall be furnished to the plaintiff's attorneys.

(2) Each defendant, his employees, agents, servants, representatives and fiduciaries, are restrained and enjoined from transferring, selling, assigning, dissipating, concealing, encumbering, impairing or otherwise disposing of in any manner, without the prior authorization of the Special Master, and upon written notice to the plaintiff's attorneys, all businesses, assets, choses in action, or other property, real or personal, or financial documents pertaining to any such assets of each defendant, held by each or in which each defendant has an interest or which are held for the defendant's benefit, during the pendency of this action or until such time as this order is amended or vacated by this court. Expenditures of funds for necessary and reasonable day-to-day personal living expenses of each defendant shall not be subject to the prohibition of this order, except that the amount of such expenditures, the payees, purposes and methods of payment shall be reported to the Special Master at the end of each and every month, commencing with the month in which this order is entered. Copies of the monthly reports shall be furnished to the plaintiff's attorneys.

(3) Each defendant shall be permitted to conduct normal and necessary day-to-day activities and the payment of expenses not in excess of $5,000.00 each. Payments in excess of $5,000.00 shall not be made without the prior authorization of the Special Master to be sought only after written notice to the plaintiff's attorneys. Full and accurate records of all expenses and business activities shall be kept by each defendant and submitted to the Special Master at the end of each and every month commencing with the month in which this order is entered. The payee, purpose and method of payment of such expenses shall be included in the report to the Special Master. Copies of the monthly reports shall be furnished to the plaintiff's attorneys.

Attorney Richard J. Bernick of Denver, Colorado, is hereby appointed as Special Master. His expenses and fees shall be paid by the plaintiff as billed, after approval of this court, and shall ultimately be re-paid or recoverable by the plaintiff as part of the costs of this lawsuit.

IT IS FURTHER ORDERED that the plaintiff's Motion for a Preliminary Injunction is granted as to the defendants Gilbert Beall and Frederic Mascolo, but only with regard to their interests in the Echo Lake property described in the complaint and evidence. Defendants Beall and Mascolo, their employees, agents, servants, representatives and fiduciaries are restrained and enjoined, during the pendency of this action, from transferring, selling, assigning, dissipating, concealing, further encumbering, impairing or otherwise disposing of, in any manner, the property known as the Echo Lake property, a legal description of which is included in Appendix J to the Verified Amended Complaint and incorporated by this reference.