843 F.2d 1311
 56 USLW 2601, RICO Bus.Disp.Guide 6908
 FEDERAL DEPOSIT INSURANCE CORPORATION,
Plaintiff-Appellee
v.
John ANTONIO; Angelo Carnemolla; Anthony Delvecchio; Faud
C. Jezzeny; Dale Leininger; Ricky Micceo, also known as
Ricky Peoili; John A. Napoli, Jr.; Jilly Rizzo; Heinrich
F. Rupp; Gary F. Thomas; William J. Vanden Eynden;
Gilbert Beall; Jilly Enterprises, Inc., a Delaware
corporation; Frederic Mascola; Beverly Ann Mosko; Gary A.
Mosko; Joseph Mosko; Martin J. Mosko; Stephen Lee Mosko;
Barbara Jean Rupp, Defendants,
and
Aaron Mosko, Defendant-Appellant.
 No. 87-1057.
 United States Court of Appeals,
Tenth Circuit.
 April 6, 1988.
 
 Christine O'Connor (Bruce D. Pringle, with her on the briefs) of Baker & Hostetler, Denver, Colo., for defendant-appellant.
 G. Robert Blakey (Barbara Blumenthal and Gary T. Cornwell, also of McGuire, Cornwell & Blakey, Denver, Colo., and Christopher A. Byrne, Sr. Atty., Federal Deposit Ins. Corp., Washington, D.C., with him on the brief), for plaintiff-appellee.
 Before LOGAN, ANDERSON, and BALDOCK, Circuit Judges.
 LOGAN, Circuit Judge.
 
 
 1
 In this appeal, we consider the validity of a preliminary injunction issued by the district court before trial to prevent dissipation of a defendant's assets which may be needed to satisfy a judgment if the suit is successful. This civil action stems from an alleged scheme to defraud the Aurora Bank (Bank), which led to the Bank's failure and its takeover by the Federal Deposit Insurance Corporation (FDIC). The FDIC sued defendant-appellant Aaron Mosko and others for civil violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. Secs. 1961-68, and the Colorado Organized Crime Control Act (COCCA), Colo.Rev.Stat. Secs. 18-17-101 to -109, and under various common law theories of liability, including violations of fiduciary duty, unjust enrichment, fraudulent disposition of assets, and civil conspiracy. Mosko and twenty-one others were named as defendants, but none of the defendants were accused of all of the violations.
 
 
 2
 The FDIC has asked for several forms of relief, including actual damages and, as permitted both under Sec. 1964(c) of RICO and Sec. 18-17-106(7) of COCCA, treble damages and attorney's fees. To ensure Mosko's ability to satisfy any potential judgment, and because he appeared to be dissipating his assets, the FDIC requested that the district court issue a pretrial injunction to prevent such dissipation. The court issued an ex parte temporary restraining order, followed by a hearing and, on December 16, 1986, the preliminary injunction. Federal Deposit Insurance Corp. v. Antonio, 649 F.Supp. 1352 (D.Colo.1986). The preliminary injunction in relevant part requires all defendants, including Mosko: (1) to give an account of their assets to a special master; and (2) to refrain from "transferring, selling, assigning, dissipating, concealing, encumbering, impairing or otherwise disposing of" their assets, unless for normal business and living expenses of less than $5,000, without prior notice to FDIC and authorization by the master. See id. at 1357. The injunction applies broadly to all assets of the defendants, including those not traceable to alleged criminal activities.
 
 
 3
 Mosko appeals the preliminary injunction on two grounds: (1) the district court lacked authority to freeze assets unrelated to the alleged violations, and (2) the district court's finding of FDIC's probable success on the merits is clearly erroneous. We reject both arguments and affirm the grant of the injunction.
 
 
 4
 * The first issue on appeal is whether the district court has the authority to freeze assets which are not traceable to illegal conduct. In issuing the preliminary injunction, the district court relied on both Colorado law, specifically COCCA Sec. 18-17-106(6), and its inherent equitable powers. Antonio, 649 F.Supp. at 1356-57. Because we uphold the district court's authority under the Colorado statute, we do not consider the injunction's validity under traditional equitable doctrines or under RICO.
 
 
 5
 Noting a pattern of questionable property conveyances by Mosko, the FDIC sought the preliminary injunction to prevent him from dissipating assets which might be needed to satisfy monetary judgments arising from this case. Mosko's potential joint and several liability under Colorado law is substantial: the FDIC seeks $3,000,000, before trebling, for violation of COCCA Sec. 18-17-104(3); another $3,000,000, before trebling, for violation of COCCA Sec. 18-17-104(4); and unspecified amounts for investigatory and litigation expenses, including attorney's fees, pursuant to COCCA Sec. 18-17-106(7).
 
 
 6
 In many respects the provisions of COCCA parallel those of the federal RICO statute. But the language relating to pretrial injunctive relief is broader in COCCA than in RICO.[1] COCCA provides:
 
 
 7
 "(5) The attorney general or district attorney may institute civil proceedings under this section.... Pending final determination, the district court may, at any time, enter such injunctions, prohibitions, or restraining orders or take such actions, including the acceptance of satisfactory performance bonds, as the court may deem proper.
 
 
 8
 (6) Any aggrieved person may institute a proceeding under subsection (1) [civil remedies for COCCA violations] of this section. In such proceeding, relief shall be granted in conformity with the principles that govern that granting of injunctive relief from threatened loss or damage in other civil cases; except that no showing of special or irreparable damage to the person shall have to be made. Upon the execution of proper bond against damages for an injunction improvidently granted and a showing of immediate danger of significant loss or damage, a temporary restraining order and a preliminary injunction may be issued in any such action before a final determination on the merits."
 
 
 9
 Colo.Rev.Stat. Sec. 18-17-106(5) and (6) (emphasis added). Other COCCA provisions state that "[t]o effectuate the intent and purpose of this article, the provisions of this article shall be liberally construed." Id. Sec. 18-17-108. An explicit legislative purpose underlying COCCA was to expand traditional "sanctions and remedies ... [which] are unnecessarily limited in scope and impact." Id. Sec. 18-17-102.
 
 
 10
 The district court read Sec. 18-17-106(6) as permitting the injunction to issue upon plaintiffs' showing that Mosko appeared to be transferring most of his assets to relatives and others. We do not find the district court's construction of Colorado law to be erroneous. We believe the Colorado courts would give broad scope to the statute upon which the district court relied. That COCCA Sec. 18-17-106(7) permits treble damages bolsters this conclusion. Defendants will have to pay these treble damages with property which necessarily may not be traceable to the illegal activity. To uphold the integrity of this remedy, courts may need to ensure the postjudgment availability of assets not related to the illegal conduct.
 
 
 11
 Mosko makes no constitutional challenge to the injunction. Rather he contends that this injunction offends traditional equitable principles as applied in the federal courts, citing to statements in De Beers Consolidated Mines, Ltd. v. United States, 325 U.S. 212, 222-23, 65 S.Ct. 1130, 1135, 89 L.Ed. 1566 (1945), and several lower court cases. Mosko's resort to federal law is irrelevant, however, since Fed.R.Civ.P. 64 requires us to look exclusively to state law in shaping this particular remedy:
 
 
 12
 "At the commencement of and during the course of an action, all remedies providing for seizure of person or property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action are available under the circumstances and in the manner provided by the law of the state in which the district court is held, existing at the time the remedy is sought...."
 
 
 13
 While Rule 64 adds that "any existing statute of the United States governs to the extent to which it is applicable," id., Mosko cites no supervening federal statute. Federal law therefore plays no role in our evaluation of the district court's power to issue this type of preliminary injunction.
 
 II
 
 14
 Mosko next argues that the district court erred in finding that the FDIC had demonstrated a substantial likelihood of prevailing on the merits. The FDIC alleged a "heist money scheme," whereby two of the principal officers of the Bank conspired to divert Bank funds as part of a plan to purchase $9,000,000 of stolen currency for $2,000,000. The district court found provisionally that Mosko participated in this alleged scheme through his unorthodox loan of $50,000 to Bank officer William J. Vanden Eynden.
 
 
 15
 According to the district court, the loan smacked of illegality in at least two respects. First, it constituted a direct fraud on the Bank. Mosko borrowed the $50,000 from the Bank with the intention of loaning it in turn to Vanden Eynden. Vanden Eynden, who was barred by law from borrowing money from the Bank because of his status as an officer, thus accomplished indirectly through Mosko what he could not have done directly. 649 F.Supp. at 1356. Second, the district court attached significance to the usurious terms of that loan: Vanden Eynden agreed to repay $100,000 within thirty days. Mosko claimed that he believed the $50,000 was to be invested in a nebulous but promising "gold deal," and that he had no actual knowledge that the money was to be used as part of an alleged scheme to purchase $9,000,000 in stolen currency.
 
 
 16
 Based on the fraudulent nature of the loan as well as the exorbitant repayment terms and the absurdity of Mosko's explanation, the district court found Mosko at least "willfully blind" to the precise nature of Vanden Eynden's illegal plot:
 
 
 17
 "While negligence is not sufficient to charge a person with knowledge, one may not willfully and intentionally remain ignorant of a fact, important and material to his conduct[,] and thereby escape punishment. The test is whether there was a conscious purpose to avoid enlightenment."
 
 
 18
 649 F.Supp. at 1356 (quoting Griego v. United States, 298 F.2d 845, 849 (10th Cir.1962)).[2] The loan to Vanden Eynden, despite Mosko's willful ignorance of its illicit purpose, sufficiently persuaded the district court that Mosko was a member of the conspiracy to warrant issuance of the preliminary injunction.
 
 
 19
 Mosko provides no persuasive evidence or argument demonstrating the district court's finding to be clearly erroneous. The attempt to distinguish Griego from this case is unconvincing. Further, Mosko's assertion that "no evidence" supports the finding of willful ignorance overlooks both the circumstantial evidence--the suspicious terms and fraudulent nature of the loan--and the district court's credibility determination. In oral argument, Mosko's attorneys asserted that the apparently usurious repayment terms actually incorporated both the $50,000 loan and other outstanding debts of about $36,000; but even accepting these undocumented debts as genuine, Mosko still would earn at least $14,000 in interest in a single month on an $87,000 loan, a per annum rate approaching 200%. We cannot hold that the district court's findings are clearly erroneous.
 
 
 20
 AFFIRMED.
 
 
 
 [1]
 RICO, 18 U.S.C. Sec. 1964(b), provides as follows:
 "(b) The Attorney General may institute proceedings under this section. Pending final determination thereof, the court may at any time enter such restraining orders or prohibitions, or take such other actions, including the acceptance of satisfactory performance bonds, as it shall deem proper."
 Religious Technology Center v. Wollersheim, 796 F.2d 1076 (9th Cir.1986), cert. denied, --- U.S. ----, 107 S.Ct. 1336, 94 L.Ed.2d 187 (1987), held that RICO does not give private parties any right to equitable remedies in civil RICO litigation. This decision has been criticized in Blakey and Cessar, Equitable Relief Under Civil RICO: Reflections on Religious Technology Center v. Wollersheim: Will Civil RICO be Effective Only Against White Collar Crime?, 62 Notre Dame L.Rev. 526 (1987). We express no opinion on the power of a court under RICO to issue a preliminary injunction of the sort before us.
 
 
 [2]
 Colorado similarly honors the "willful ignorance" doctrine in civil actions. See, e.g., Tibbetts v. Terrill, 44 Colo. 94, 96 P. 978, 982 (1908)