**SEQUA CAPITAL CORPORATION, Plaintiff,**

v.

**Leonard K. NAVE, Defendant.**

**No. 93 Civ. 7172 (SAS).**

United States District Court,
S.D. New York.

Feb. 14, 1996.

---

Alan G. Katz, Saretsky Katz & Drenoff, P.C., New York City, for plaintiff.

Harvey A. Feintuch, Feder Connick & Goldstein, P.C., Mineola, New York, for defendant.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

Plaintiff Sequa Capital Corp. ("Sequa") moves for an order, pursuant to Fed.R.Civ.P. ("FRCP") 64 and N.Y.Civ.Prac.L. & R. ("CPLR") 5229, enjoining and restraining Defendant Leonard Nave ("Nave"), with the same effect as if a restraining notice had been served upon him after judgment, from making or suffering any sale, assignment, transfer, or interference with any property in which he has an interest, until the judgment to be entered herein has been satisfied or vacated (the "order restraining Nave's assets"). For the reasons set forth below, the order is granted as modified.

## BACKGROUND

On June 6, 1995, this Court granted Sequa's motion for summary judgment seeking payment on three promissory notes on which Nave acted as co-maker or unconditional guarantor. *See* Memorandum Opinion and Order, 93 Civ. 7172 (SAS), dated June 22, 1995, at 1. On consent of the parties, the case was referred to Magistrate Judge Bernikow for calculation of damages, including interest, costs, fees, and expenses. *See id.* at 4. After the Court granted Sequa's motion for summary judgment, Sequa learned that Nave had transferred his interest in real property located in Versailles, Kentucky, in February 1995, and his interest in a Florida condominium on June 10, 1995. On January 22, 1996, Sequa moved for an order compelling Nave to appear for an examination concerning the nature, extent, and location of his assets and the order restraining Nave's assets. On the same day, the Court temporarily granted the order restraining Nave's assets pending the hearing and determination of this motion. *See* Order to Show Cause, 93 Civ. 7172 (SAS), dated January 22, 1996. On February 2, 1995, after the hearing on the motion, the Court granted Sequa's request compelling Nave to appear for an examination,[1] and lifted the temporary order restraining any transfers of Nave's assets pending the Court's decision regarding the remainder of Sequa's motion. *See* Tr. at 7, 22.

To date, the Court is aware that Nave engaged in the following property transactions: 1) On January 31, 1995, Nave sold property in Versailles, Kentucky, for $90,000 and, after paying off the mortgage, received approximately $18,000; 2) On June 10, 1995, Nave sold a condominium in Florida to Rick Avare, a business associate, whereby Avare assumed the payments on a $64,000 mortgage, paid $4,000 in maintenance fees, and conveyed to Nave a vacant lot in Charleston, South Carolina, worth about $35,000; and 3) On November 1, 1995, Nave sold three parcels of land in Versailles, Kentucky, for $705,285 pursuant to an installment sale agreement. In exchange for these properties Nave receives monthly payments of $12,514.82 until September 2002, and the sum of $20,828.20 on October 1, 2002, for a total payment of $1,059,478.26 including principal and interest. The monthly payments Nave receives are equal to the amount owed for the mortgage payments, taxes, and insurance. While Nave only remains responsible for the mortgage payments, he continues to pay the taxes and insurance on behalf of the purchaser. The Court has no knowledge of when the mortgage will be paid off or how much equity Nave has in these properties. *See* Affidavit of Leonard Nave, 93 Civ. 7172 (SAS), dated January 24, 1996, at 2–4. Furthermore, Nave constructed a house in South Carolina on the lot he received from Avare which is now for sale. *See id.* at 2.

## DISCUSSION

The relief Sequa seeks is specifically provided for in CPLR 5229.[2] FRCP 64, which permits courts to grant certain provisional remedies in accordance with state law, states:

> [D]uring the course of an action, all remedies providing for the seizure of person or property for the purposes of securing satisfaction of the judgment ultimately to be entered in the action are available under the circumstances and in the manner provided by the law of the state in which the district court is held.... The remedies thus available include arrest, attachment, garnishment, replevin, sequestration, and other corresponding or equivalent remedies, however designated....

---

1. Nave's counsel did not oppose the request for an examination. *See* Transcript of Oral Argument ("Tr."), 93 Civ. 7172 (SAS), dated February 2, 1996, at 14–15.

2. CPLR 5229 provides:
   In any court, before a judgment is entered, upon motion of the party in whose favor a verdict or decision has been rendered, the trial judge may order examination of the adverse party and order him restrained with the same effect as if restraining notice had been served upon him after judgment.
   The effect of a restraining notice is described in CPLR 5222(b), which provides that "[a] judgment debtor ... served with a restraining notice is forbidden to make or suffer any sale, assignment, transfer or interference with any property in which he has an interest...." This is precisely the relief requested by Sequa.

Thus, the issue is whether the relief provided for in CPLR 5229 is a "remed[y] providing for the seizure of person or property for the purposes of securing satisfaction of the judgment ultimately to be entered in the action" within the meaning of FRCP 64. Nave argues that it is not.

■ Nave contends that the relief provided in CPLR 5229, which is injunctive in nature, is not a "corresponding or equivalent remed[y]" as intended by FRCP 64. There is, however, nothing in the language of FRCP 64 which precludes the use of injunctive relief. Furthermore, courts have granted injunctive relief, when authorized to do so by state law, pursuant to FRCP 64. *See In re Feit & Drexler, Inc.,* 42 B.R. 355, 357–58 (S.D.N.Y.1984) (applying state law standard for granting an injunction pursuant to CPLR 6301), *aff'd,* 760 F.2d 406, 415 n. 2 (2d Cir. 1985) (in affirming grant of injunctive relief court stated that if the mandatory injunction was a remedy provided in FRCP 64, then the district's court application of the New York standard was "entirely proper and perhaps even required"); *Federal Deposit Ins. Corp. v. Antonio,* 843 F.2d 1311, 1313 (10th Cir. 1988) (court granted asset freeze under Colorado law which did not require showing of irreparable harm); *cf. Chemical Bank v. Haseotes,* 13 F.3d 569, 572–73 (2d Cir.1994) (court affirmed district court's denial of injunctive relief provided for in N.Y. U.C.C. Law § 8–317(6) because defendant failed to

satisfy requirements for such relief). Accordingly, there is no basis for concluding that injunctive relief per se is unavailable through FRCP 64.

■ Nave also argues that when a party seeks injunctive relief in an action for money damages, which is in substance an attachment of properties unrelated to the underlying claims, it must comply with the requirements for attachment as provided by state law. *See Rosen v. Cascade Int'l, Inc.,* 21 F.3d 1520, 1530 (11th Cir.1994); *Green v. Gaskell,* 1988 WL 42323 (S.D.N.Y.) at *3; *Ashland Oil, Inc. v. Gleave,* 540 F.Supp. 81, 82–83 (W.D.N.Y.1982).[3] The cases cited by Nave hold that a district court may not use its equitable powers to effectuate an attachment by circumventing the safeguards state law provides for attachments.[4] These cases, however, all deal with requests for prejudgment relief in order to satisfy a *potential* judgment prior to verdict or decision. Here, judgment is not just potential, it is certain. Relief under CPLR 5229 or any other similar provision was not available in any of these cases.[5] These cases stand only for the proposition that prejudgment injunctive relief, which is in effect an attachment, must be authorized by state law. *See Sequa Corp. v. Gelmin,* 1995 WL 404726 (S.D.N.Y.) at *6. Applying CPLR 5229 to this case, in which a favorable decision has been rendered to Se-

3. While the Second Circuit has not squarely addressed this issue, a review of recent decisions reveals that it is likely to disagree with this proposition. *See Republic of the Philippines v. Marcos,* 806 F.2d 344, 356 (2d Cir.1986) (where attachment under CPLR 6201 would have been unavailable, court affirmed issuance of injunction imposing a constructive trust on properties which were part of the underlying claims and where money damages were not requested), *cert. dismissed,* 480 U.S. 942, 107 S.Ct. 1597, 94 L.Ed.2d 784, *cert. denied,* 481 U.S. 1048, 107 S.Ct. 2178, 95 L.Ed.2d 835; *In re Feit & Drexler, Inc.,* 760 F.2d 406, 416 (2d Cir.1985) (where there was danger that defendant would dissipate her assets in an action for money damages, court authorized asset freeze where both state and federal standards were met); *see also Gelfand v. Stone,* 727 F.Supp. 98, 103 (S.D.N.Y.1989) (court may grant preliminary injunction without considering state attachment statute although requirements for attachment were met in this case). Other circuits also appear to disagree with the Eleventh Circuit. *See Reebok Int'l, Ltd. v. Marna-*

*tech Enters., Inc.,* 970 F.2d 552, 559 & n. 10 (9th Cir.1992) (an asset freeze may be granted under either FRCP 64 and state law or FRCP 65 and the court's inherent equitable power); *Hoxworth v. Blinder, Robinson & Co., Inc.,* 903 F.2d 186, 195–197 & n. 14 (3d Cir.1990) (preliminary injunction may issue under FRCP 65, without reference to state law, in an action for money damages).

4. Sequa is seeking relief pursuant to FRCP 64, not pursuant to FRCP 65 and this Court's equitable powers. To this extent, the present case is distinguishable from the authorities relied on by Nave.

5. In *Rosen,* where the court reversed the Florida district court's order freezing defendant's assets, Florida had no provision similar to CPLR 5229. Additionally, Florida courts were not authorized to issue the type of injunction granted by the district court. This is in direct contrast to the situation presented here.

qua, is not in conflict with any of the precedent cited by Nave.

■ The remedy provided in CPLR 5229 is designed to "secur[e] satisfaction of the judgment ultimately to be entered in the action" as provided for in FRCP 64. Restraining the sale of assets, as provided by CPLR 5229, has substantially the same effect as an attachment and a seizure of property. *See Rosen,* 21 F.3d at 1530; *Green,* 1988 WL 42323 at *3. Accordingly, I conclude that CPLR 5229 is a remedy within the meaning of FRCP 64.

■ Sequa is entitled to the benefit of CPLR 5229 "under the circumstances and in the manner provided by the law" of New York. FRCP 64. Other than having received a favorable verdict or decision, there are no prerequisites to obtaining the relief provided in CPLR 5229. It is in the court's discretion whether to grant relief and the manner and limitations in which relief is granted. *See* 6 Weinstein, Korn & Miller, New York Civil Practice ¶ 5229.04 (1995). Courts may order an adverse party restrained until judgment is entered where there is a danger that he will dispose of his assets. *See Kaminsky v. Kahn,* 46 Misc.2d 131–132, 258 N.Y.S.2d 1000, 1001 (Sup.Ct. N.Y.Co.1965); CPLR 5229 Legislative Studies and Reports (McKinney 1978). In a promissory note case, relief under CPLR 5229 has been granted upon a finding of liability. *See Ibanez v. Pfeiffer,* 76 Misc.2d 363, 350 N.Y.S.2d 964, 966 (Civ.Ct.Queens Co.1973).

■ Nave's concern that the restraining order will leave him without means to live is unfounded. Relief under CPLR 5229 is provided "with the same effect as if a restraining notice had been served after judgment." CPLR 5222, which governs post judgment restraining notices, describes the procedures and formalities which must be followed in order to obtain such relief. Furthermore, CPLR 5222 does not restrain property which is not available to satisfy a money judgment. *See* CPLR 5222 Practice Commentaries C5222:5 (McKinney 1978); 6 Weinstein, Korn & Miller, *supra,* ¶ 5222.11 at 52–313. CPLR 5205 lists property that is exempt from application to the satisfaction of money judgments and includes "ninety percent of the earnings of the judgment debtor for his personal services sixty days before, or any time after, an income execution is delivered...." Consequently, restraining notices do not reach the earnings of the judgment debtor absent an income execution for ten percent of the payments. *See Silbert v. Silbert,* 25 A.D.2d 570, 267 N.Y.S.2d 744, 746 (2d Dep't 1966); *Power v. Loonam,* 258 N.Y.S.2d 136, 137–38 (Sup.Ct.Nassau Co.1965). As CPLR 5229 addresses the period between decision and the entry of judgment, the restraining order will only be granted until judgment is entered.

## CONCLUSION

For the reasons stated above, the Court finds that Sequa is entitled to relief pursuant to FRCP 64 and CPLR 5229. In connection with this finding,

IT IS ORDERED THAT:

Leonard Nave is enjoined and restrained, with the same effect as if a restraining notice had been served upon him after judgment, from making or suffering any sale, assignment, transfer, or interference with any property in which he has an interest. These restrictions shall apply until such time as judgment in this action has been entered.

SO ORDERED.