TRUSTEES OF the UIU HEALTH AND WELFARE FUND and UIU Pension Trust, Plaintiffs,

v.

NEW YORK FLAME PROOFING CO., INC.; General Drapery Services, Inc.; James Belmont and Upholstery Employers Association, Inc., Defendants.

No. 85 Civ. 5905 (RWS).

United States District Court, S.D. New York.

May 23, 1986.

John J. Gallione, P.C., New York City, for plaintiffs; by Jonathan C. Reiter, of counsel.

Robert M. Saltzstein, Lake Success, N.Y., for defendants New York Flame Proofing Co., Inc., General Drapery Services, Inc. and James Belmont.

Brodsky, Linett, Altman & McMahon, New York City, for defendant Upholstery Employers Association, Inc.; by James C. McMahon, Jr., of counsel.

## OPINION

SWEET, District Judge.

The Trustees of the UIU Health and Welfare Fund and UIU Pension Trust (the "Union Funds") have brought this action pursuant to 29 U.S.C. §§ 1132, 1145 to collect allegedly delinquent contributions owed by the defendants New York Flame Proofing Co., Inc. ("Flame Proofing"), General Drapery Services, Inc. ("General Drapery"), Joseph I. Belmont ("Belmont") and Upholstery Employers Association, Inc. (the "Association") pursuant to a series of collective bargaining agreements between the defendants and the Upholsters' International Union of North America. Belmont and the Association have brought motions to dismiss or in the alternative for summary judgment dismissing the complaint as against them. In response, the Union Funds have cross-moved for partial summary judgment against Flame Proofing. For the following reasons, the motions of Belmont and the Union Funds are granted, and the motion of the Association is denied.

**Facts**

As alleged in the Union Funds' complaint, there has existed a collective bargaining agreement between the Union and the defendants Flame Proofing, General Drapery and Belmont from 1978 to the present. The first collective bargaining agreement was signed on behalf of Flame Proofing as of September 1, 1978 to be effective for a period of three years. A second similar agreement was signed as of September 1, 1981 and continued in force until August 30, 1984. Flame Proofing does not contest the validity of these agreements. The most recent collective bargaining agreement, however, was executed by the Association and became effective as of September 1, 1984. The Union Funds allege that this last agreement was executed by the Association on behalf of Flame Proofing and General Drapery, but these defendants deny being a party to this agreement.

Pursuant to each of the collective bargaining agreements, the employer is obligated to make contributions to the Union Funds. Under the 1978 agreement, the employer was obligated to pay each month 5% of the "total gross monthly earnings" of the employees to the UIU Health and Welfare Fund, together with a flat fee of $22.50 per month. In addition, the employer was required to pay an amount equal to 5% of the employees' earnings to the UIU Pension Trust. This latter contribution was increased to 6% as of September 1, 1980. The 1981 agreement also provided for these same contributions to the Union Funds with a small increase in the flat fee payable to the UIU Health and Welfare Fund. Finally, the 1984 agreement provides only for a flat monthly fee of $173.50 (increased to $204.50 as of September 1, 1985) for each employee payable to the UIU Health and Welfare Fund and a continuation of the 6% contribution to the UIU Pension Trust.

Together with the required fees, the employer was obligated to submit a monthly contribution report to the Union Funds. The complaint alleges that during the years of 1980 through 1983 the defendants submitted contribution reports which understated the amounts of the total gross monthly earnings of the employees and therefore reduced the contributions required under the agreements. The audit allegedly compared the contribution reports to wage forms filed by the employees. It further alleges that between June 1984 and the present, the defendants have failed to make any payments to the Union Funds.

Although the 1978 and 1981 agreements were executed only by Flame Proofing, the agreements apparently cover employees of both Flame Proofing and General Drapery. According to the deposition testimony of

Belmont, there are three corporations which do business on the same premises at 635 West 23 Street in New York City: Flame Proofing, General Drapery and Sol-R-Veil, Inc. Belmont is the sole shareholder and sole corporate officer of each of these corporations. According to his testimony, the same machines are used in the business of these three corporations and the work is done by the same group of employees. Thus, employees who engage in work for General Drapery or Sol-R-Veil are paid by Flame Proofing. Belmont stated that he understood that the agreements covered a "good majority" of the workers employed by Flame Proofing and General Drapery.

## A. Union's Funds' Motion for Partial Summary Judgment

The Union Funds seek partial summary judgment for alleged deficiencies in contributions from Flame Proofing from 1980 through August, 1984. These alleged deficiencies can be separated into two components: the partial deficiencies from 1980 through 1983 and the absence of any payments from June through August, 1984. Since the validity of the agreements covering these contributions is not in dispute, the only issue raised by this motion is whether there is a factual dispute regarding the amount of contributions required under the agreements.

In support of the Union Funds' motion for summary judgment to recover the partial deficiencies, counsel for the Union Funds has filed an affidavit asserting that an audit was conducted which compared the wage forms ("W–2 forms") of the bargaining unit employees to the contribution forms prepared by Flame Proofing setting forth the monthly wages of each employee. A copy of the detailed audit was furnished to the defendants setting forth, for each year, the name and social security number for each bargaining unit employee and a comparison between the earnings reported by Flame Proofing and those reported on the W–2 forms.

Flame Proofing has asserted the existence of several factual issues regarding the computation of earnings for each employee. Flame Proofing contends that the audit examination of W–2 forms overstates the earnings governed by the agreements in several ways. First, Flame Proofing suggests that some of the employees were not members of the union during the entire year. For these employees who joined the union after working as a non-union employee, the W–2 forms would overstate the amount of money earned pursuant to the collective bargaining agreement. This contention, however, fails to raise a material issue because the two employees, Lorenzo and Brenes, who apparently joined the union during the middle of 1982, were not included in the audit for that year and therefore Flame Proofing's assertions are irrelevant.

In addition, Flame Proofing has noted that certain bonuses were paid to union employees in 1983 and asserts that these bonuses, although reportable on the W–2 forms, were not required by the agreements and therefore not includable as earnings under the provisions requiring contributions to the Union Funds. Similarly, it contends that wage payments for sick days and vacation days are not includable for the purpose of contributions.

The governing provision of Article 12 of the agreement states that contributions to the Union Funds are to be based on a percentage of the "total gross monthly earnings of the employees." Although this term is not specifically defined elsewhere in the agreement, its plain meaning indicates that the employer is obligated to make contributions based on all wages paid to employees in connection with their employment during the previous month. In accordance with this interpretation, Flame Proofing's contributions must be calculated by including all wages stated on the W–2 forms including bonuses, sick pay and vacation. There is no indication from the agreement that these specific types of payment should be excluded nor does the

agreement limit contributions to a percentage of the hourly wages earned.

Where a contractual term is clear from the face of the agreement, the interpretation of that term is a matter of law which is appropriate to determine on a motion for summary judgment. *See e.g., Leslie Fay, Inc. v. Rich,* 478 F.Supp. 1109, 1113 (S.D.N.Y.1979). Flame Proofing, as the employer with records of the total wage payments made, could have raised any objections to the detailed calculations set forth in the audit statements filed by the Union Funds. Flame Proofing having failed to raise any objections, this portion of the Union Funds' motion for summary judgment is granted in the amount of $8,045.98 for the Health and Welfare Fund and $9,655.07 for the Pension Trust, with interest and a 10% attorneys' fee as required by the agreement.

The Union Funds' motion for summary judgment with regard to the alleged deficiencies from June through August, 1984, stands on a different footing. This claim is not based on an independent audit conducted by the Union Funds but rather on the contribution reports prepared by Flame Proofing. It is undisputed that Flame Proofing has failed to make any payments in accordance with these contribution reports. The only defense raised by Flame Proofing to this claim is that summary judgment based on the contribution reports would be inappropriate when similar contribution reports for the 1980–1983 time period have been called into question by the plaintiffs. This assertion, however, fails to raise any material issue of fact since the Union Funds have accepted the validity of the contribution reports for June, July and August, 1984. Based on this uncontroverted evidence, therefore, the Union Funds will be granted summary judgment on this aspect of their claim in the amount of $6,754.30 for the Health and Welfare Fund and $6,201.95 for the Pension Trust, with interest and the 10% attorneys' fee.

## B. Belmont's Motion for Summary Judgment

Belmont, the president and sole shareholder of both Flame Proofing and General Drapery, has brought a motion for summary judgment to dismiss the complaint against him. The complaint alleges that Belmont was the control person of all the defendant corporations and therefore is an employer under 29 U.S.C. § 1002(5). Belmont states in his affidavit that he has never acted outside his capacity as president of the corporations, that he has never transacted personal business through the corporate structures, commingled personal and corporate funds or assumed personal liability for any corporate debts.

There is a presumption that the corporation is a separate entity from the shareholders or officers and thus only a corporation is generally liable for violations of ERISA. *See Contractors, Laborers, Teamsters & Engineers Health & Welfare Plan v. Hroch,* 757 F.2d 184, 190 (8th Cir. 1985); *Combs v. Indyk,* 554 F.Supp. 573, 575 (W.D.Pa.1982). The question of whether the corporate veil insulates Belmont against liability under ERISA is a question of federal substantive law, though state law may be used as a reference guide. *Seymour v. Hull & Moveland Engineering,* 605 F.2d 1105, 1109 (9th Cir.1979). Some of the factors which should be considered are "the amount of respect given to the separate identity of the corporation by its shareholders, the degree of injustice visited on the litigants by recognition of the corporate entity, and the fraudulent intent of the incorporators." *Id.* at 1111.

Although the Union Funds have presented evidence that Belmont "ignored the separate identities of the corporations he controlled," there is no indication that he "use[d] them to pursue personal business." *Gartner v. Snyder,* 607 F.2d 582, 588 (2d Cir.1979) (construing New York law). Thus the intermingling of one corporation's affairs with that of another would merely tend to establish a claim against the other corporations but not against an individual. *Id.* at 586–88. Since there is also no indication that the corporations were

created with an intent to defraud or that their assets would be insufficient to satisfy a judgment, the Union Funds have not provided any basis for establishing the personal liability of Belmont. Accordingly, summary judgment will be granted dismissing the complaint against him.[1]

### C. The Association's Motion to Dismiss

The Association has brought a motion, pursuant to Rule 12(c), Fed.R.Civ.P., dismissing the complaint for failure to state a cause of action against it. The Association contends that it was not obligated to pay any delinquencies of individual employers to contribute to the Union Funds.

 Although the Association's contention is intuitively plausible, it is not established by the present record. The 1984 agreement was executed as of September 1, 1984 by the Association and the Union. On its face, the 1984 agreement refers to the Association, "its successors and assigns" as the "Employer." In turn, Article 12 of the 1984 agreement obligates the "Employer" to pay the Health and Welfare Fund $173.50 monthly for "each employee actively employed in the bargaining unit" and to pay the Pension Trust 6% of the "total gross monthly earnings of the Employees earned during the immediately preceding calendar month, who were subject to and covered by such collective bargaining agreement ..." Thus, the 1984 agreement on its face appears to bind the Association to the contributions required under the Union Fund provisions. Attached to the 1984 agreement is a certification of the Association which states that the 21 listed companies, including General Drapery, are members of the Association who have authorized it to sign the 1984 agreement on their behalf. In this action, however, Flame Proofing and General Drapery have denied the validity of this authorization.

While the Association may be able to establish that the parties to the 1984 agree-

ment did not intend to obligate the Association to contribute to the Union Funds, such an interpretation cannot be gleaned from a facial reading of that agreement. Moreover, the Association has not provided any documentation that it has assigned any obligations specified under the 1984 agreement to the individual company members. Therefore, since the allegations of the complaint must be accepted for the purposes of this motion, the Association's motion to dismiss will be denied.

### Conclusions

For the reasons set forth above, the Union Funds' motion for partial summary judgment is granted. The Association's motion to dismiss is denied and Belmont's motion for summary judgment is granted. The clerk is directed to dismiss the complaint against Belmont.

IT IS SO ORDERED.

---

1. Although Belmont as the sole shareholder may be personally liable for unpaid ERISA contributions by virtue of New York law, *see Sasso v. Vachris*, 66 N.Y.2d 28, 494 N.Y.S.2d 856, 484 N.E.2d 1359 (1985), an action to enforce such a liability may only be enforced if a judgment against the corporation is unsatisfied. *See* N.Y. Bus.Corp.Law § 630(a).