**David H. GELFAND, as executor of the estate of Sidney Gelfand, and Wallace Musoff, Plaintiffs,**

**v.**

**Andrew L. STONE, Defendant.**

**No. 88 Civ. 5790(PKL).**

United States District Court, S.D. New York.

Nov. 17, 1989.

Patterson, Belknap, Webb & Tyler, New York City (Blair Axel, Mitchell B. Briskin, of counsel), for plaintiffs.

Bryan, Cave, McPheeters & McRoberts, New York City (Michael S. Biggers, of counsel), for defendant.

LEISURE, District Judge.

This is an action for attorney's fees arising out of an Internal Revenue Service action against defendant Andrew Stone. The case was referred to Magistrate Naomi Reice Buchwald for general pretrial and settlements on February 10, 1989. A second reference to the Magistrate for substantive motions was entered on August 15, 1989, by Judge Michael Mukasey of this Court sitting in Part One. Pursuant to that reference, Magistrate Buchwald heard a motion by plaintiffs for a preliminary injunction. Plaintiffs moved to have $850,-000 of a $5 million tax refund owed to defendant paid into the registry of this Court to secure satisfaction of any monetary judgment which might be entered in this action. Magistrate Buchwald filed a Report and Recommendation ("Report") on September 29, 1989, which found that the standard for the issuance of a preliminary injunction had been met and recommended that such an injunction be issued ordering

that $668,000 be paid into the registry of this Court to secure a possible judgment in this case. Defendant filed objections to the Report on October 23, 1989, after receiving a ten-day extension from this Court.[1] Pursuant to Fed.R.Civ.P. 72(b), this Court has undertaken a *de novo* review of this matter as presented to the Magistrate. Based on that review, the Court adopts the Magistrate's recommendation in her Report that a preliminary injunction be issued in this case.

BACKGROUND

This case arises out of the extensive litigation of defendant Andrew Stone's ("Stone") tax liabilities for the years 1963–67. In 1974 the Internal Revenue Service ("IRS") charged Stone with failing to pay some $5.8 million in income taxes and also demanded $2.9 million in penalties. Stone retained Sidney Gelfand ("Gelfand") and Wallace Musoff ("Musoff") to represent him in this matter. Four years later, on April 27, 1978, Gelfand and Musoff entered into a written contingent fee agreement ("contingency agreement") with Stone which stated that Gelfand and Musoff would be compensated by a percentage of any reduction in Stone's tax liability gained through litigation in the Tax Court. It is that agreement which is the center of this controversy. Plaintiffs claim they are owed compensation under that contract, or, in the alternative, that they are owed compensation under the quantum meruit theory.

The litigation over Stone's tax liabilities took a tortured and time-consuming path, finally reaching resolution earlier this year. A trial was originally held before a Special Trial Judge of the Tax Court, beginning in May 1977. That trial lasted until November 1978. Eighteen months later, the Special Trial Judge issued a report which reduced Stone's liability from $5.8 million to under $50,000. The IRS objected to the Special Trial Judge's report. In February 1983, a judge of the Tax Court rejected the Special Trial Judge's credibility determinations, ruled in favor of the IRS on a number of issues, and ordered the parties to

---

1. Plaintiffs objected to the extension of time in a letter to the Court dated October 16, 1989.

submit computations of the exact amounts of the alleged deficiencies and over-payments. Gelfand and Musoff filed a Motion for Reconsideration of the Tax Court's decision.

Prior to the determination of that motion, Gelfand died, and Stone retained new counsel to complete the computations required by the Tax Court. In July 1987, the Tax Court entered a decision setting Stone's tax liability at just under $1.5 million. Stone, represented by his new counsel, appealed to the United States Court of Appeals for the District of Columbia Circuit. On January 10, 1989, the D.C. Circuit reversed the Tax Court and reinstated the decision of the Special Trial Judge. The case was remanded for further computations of liability in accordance with the rulings of the Special Trial Judge. *Stone v. Commissioner of the Internal Revenue Service*, 865 F.2d 342 (D.C.Cir.1989). New computations have been filed with the Tax Court and the parties are awaiting a final decision on the overpayments. While Stone and the IRS disagree on the exact amount of the refund owed Stone, both agree that it will be in excess of $5 million.

The central dispute before the Court is the calculation of the fee owed to Gelfand and Musoff under the contingency agreement. Gelfand and Musoff claim they are entitled to a fee based on the reinstated determination of the Special Trial Judge, as they claim it was their work that got that the original reduction from $5.8 million to under $50,000. Under the formula of the contingency agreement, this would entitle Gelfand and Musoff to fees of over $833,-000, of which some $40,000 has been paid, leaving a balance of approximately $793,-000.[2] Gelfand and Musoff claim they are also owed $56,000 outside of the contingency agreement for representation of Stone's wife. Plaintiffs have expressed concern that Stone will attempt to avoid any judgment entered against him in this case. Accordingly, plaintiffs now come before the Court requesting a preliminary injunction requiring defendant to have the IRS depos-

it with this Court $850,000 of the refund to be received as a result of the reinstated decision of the Special Trial Judge.

DISCUSSION

■ "A party seeking a preliminary injunction must demonstrate that it is likely to suffer possible irreparable harm if the requested relief is not granted and 'either (1) a likelihood of success on the merits of its case or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in its favor.'" *Citibank v. Nyland, Ltd.*, 839 F.2d 93, 97 (2d Cir.1988), *quoting Coca–Cola Co. v. Tropicana Products, Inc.*, 690 F.2d 312, 314–15 (2d Cir.1982). *See also Consolidated Gold Fields, PLC v. Minorco, S.A.*, 871 F.2d 252, 256 (2d Cir.1989). In general, preliminary injunctions are not available to redress injuries fully compensable by monetary damages. *Loveridge v. Pendleton Woolen Mills, Inc.*, 788 F.2d 914, 917–18 (2d. Cir. 1986); *KMW International v. Chase Manhattan Bank*, 606 F.2d 10, 14 (2d Cir.1979); *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979). There are exceptions to this rule. A preliminary injunction may issue to preserve assets as security for a potential monetary judgment where the evidence shows that a party intends to frustrate any judgment on the merits by making it uncollectible. *Republic of the Philippines v. Marcos*, 806 F.2d 344, 356 (2d Cir.1986); *In re Feit & Drexler, Inc. v. Drexler*, 760 F.2d 406, 416 (2d Cir.1985). Such a demonstration of intent to frustrate a judgment will satisfy the requirement for a preliminary injunction of a showing of irreparable harm.

■ The Magistrate found that there was a sufficient showing of defendant's likelihood of frustrating a judgment, such as to warrant a finding of irreparable harm. The Court agrees. There is substantial evidence of Stone's past fraudulent activities, as well as his on-going efforts to place his assets outside the reach of his

---

**2.** Defendant appears to have admitted to have some liability under the contingency fee agreement. *See* Letter from Andrew Stone to Janet Lazar dated March 21, 1988, Amended Complaint, Exhibit B.

creditors. In his submissions before the Magistrate and now in his objections to the Report, Stone attempts to downplay the seriousness of his past acts and to reduce the significance of his on-going practices.

The Magistrate first focuses on defendant's 1969 pleas of guilty to eight counts of knowingly making false, fictitious, or fraudulent statements or representations to the government and to a count of conspiracy to commit an offense or to defraud the government. Stone served two years of a fifteen year sentence. These convictions arose from the same set of transactions that lead to the tax litigation in which plaintiffs represented Stone. Stone now claims that despite his plea to the offenses charged, he has been exonerated of any wrong-doing by the findings of the Special Trial Judge and the D.C. Circuit that he did not bear personal tax liability for the financial improprieties of the companies he controlled. In fact, the D.C. Circuit described the transactions which lead to the criminal convictions as ones "designed to mulct the United States government, either as a purchaser of defense equipment, or as a collector of taxes due from Chromcraft [Stone's former company], or both." *Stone v. Commissioner*, 865 F.2d at 343.

Further, another court reviewing the same convictions explicitly rejected defendant's attempts to downplay the significance of the guilty pleas and to claim that the pleas were not made knowingly. *Alsco–Harvard Fraud Litigation*, 523 F.Supp. 790, 800–02 (D.D.C.1981). While the court in *Alsco–Harvard* did limit the collateral estoppel effect of the convictions in the civil fraud action before it, 523 F.Supp. at 804, the court in no way absolved Stone of any guilt or reduced the significance of his convictions.

The seriousness of the charges to which Stone pleaded guilty is evidence of his predilection for deceptive acts. "[T]he commission of past illegal conduct is highly suggestive of the likelihood of future violations." *Securities & Exchange Comm'n v. Management Dynamics, Inc.*, 515 F.2d 801, 807 (2d Cir.1975). However, a court may not rest its finding of the likelihood of future harm solely on the past illegal conduct. "Whether the inference that the defendant is likely to repeat the wrong is properly drawn, however, depends on the totality of circumstances, and factors suggesting that the infraction might not have been an isolated occurrence are always relevant." *Id.*

In this case, the totality of the circumstances indicate clearly that the past predilection for deceptive and fraudulent practices is likely to continue.[3] The Magistrate points out that most of defendant's assets, including his house and eighty percent of one of the companies he controls, are held by family members and not by him directly. Report at 8. Another substantial asset is assigned as security on notes. *Id.* Stone has also testified under oath that his most substantial asset, his ownership of the K–D Lamp Company (also apparently known as Concord Instrument Corporation) is completely illiquid and could not be used, directly or indirectly, to satisfy a judgment against him.[4] Plainly stated, Stone is or has been involved in a number of law suits in which his veracity has been called into question. The Magistrate has clearly and

---

**3.** Defendant protests that he has never been convicted or found liable for any legally fraudulent conduct. Technically, this is true. However, this does not mean defendant has never been found to have fraudulent intent. The D.C. Circuit described some of defendant's conduct relating to Chromcraft and stated that the facts of the transactions "suggest a fraud ..." 865 F.2d at 350. Further, Stone, along with a co-defendant, was found to have had actual knowledge of certain fictitious claims made against the government. *Alsco–Harvard*, 523 F.Supp. at 810.

**4.** Defendant now asserts that his holdings in K–D Lamp could be used indirectly to satisfy a

judgment in this case, and that this was not revealed in the deposition testimony because defendant was not explicitly asked about every possible source of funds from the holdings in K–D Lamp. The Court rejects this analysis of defendant's testimony. Defendant was explicitly asked if there was any source other than the $5 million to be received from the IRS from which a judgment could be satisfied. His explicit answer was that there was no other source from which funds could be obtained. Affidavit of Blair Axel, Esq., sworn to on August 4, 1989, Exhibit B, at 396.

concisely outlined these actions and their findings.[5] Report at 8–11. Suffice it for present purposes to highlight one of these cases, *Stone v. Rosenbaum,* an action brought by defendant against a former partner in the D.C. District Court.[6] In that action, Judge Gerhard A. Gesell of the United States District Court for the District of Columbia found that Stone had consistently engaged in "unlawful and inequitable conduct" with regard to the same Swiss bank accounts that first put him in trouble with the IRS. *Stone v. Rosenbaum,* 729 F.Supp. 869, 871 (D.D.C.1989).[7] Stone now challenges Judge Gesell's findings and objects to his strong condemnatory language. This Court finds no reason on the record before it to doubt the findings of such an experienced and respected jurist.

The totality of the circumstances, including the findings made in other courts about defendant's conduct, and the clear appearance that defendant has made efforts to conceal assets or otherwise place them out of reach of his creditors, combine with his prior conviction to meet the standard set out for finding the strong possibility of irreparable harm. *See SEC v. Management Dynamics, Inc.,* 515 F.2d at 807.

■ It is necessary now to explore whether plaintiffs have shown either probable success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation, with the balance of hardship weighing toward the moving party. *Consolidated Gold Fields,* 871 F.2d at 256. The Magistrate in her Report presented an extensive analysis of plaintiff's likelihood of success. Report at 15–18. The Court finds the Magistrate's analysis to be persuasive and does not feel it necessary to repeat her findings in their entirety.

It is clear that plaintiffs performed services pursuant to the contingency agreement. At the very least, plaintiffs acted as counsel for defendant during the duration of the extensive proceeding before the Special Trial Judge and during the proceeding before the Tax Court through the filing of the motion for reconsideration. While there appears to be a serious factual dispute about the extent of work done by plaintiffs in the tax matter, especially by Musoff, there is no doubt that plaintiffs did a substantial amount of work for defendant on the matter covered by the contingency agreement and are entitled to compensation for that work. Regardless of whether that compensation will be granted by the Court under the contract or under quantum meruit theories, plaintiffs have made a clear showing at least of the existence of sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tilting toward the plaintiffs.[8]

As the Magistrate pointed out, the balance of hardships weighs heavily in this case toward plaintiffs. Report at 18–19. If the tax refund is distributed to defen-

---

**5.** One of the cases pointed out by the Magistrate is *Penn Central Corporation v. Stone & Rosenbaum,* E.D.Pa. No. 88–0326. Since the issuance of the Magistrate's Report, that case has settled with defendants Stone and Rosenbaum agreeing to pay $830,000. Penn Central had claimed liability of $3.1 million. While the amount of a settlement cannot be viewed by the Court as an admission of guilt, neither can a reduction in payment from the amount demanded be viewed as an exoneration of defendants in a settled action.

**6.** In this action, Stone attempted to have a similar sort of control placed on a tax refund due Rosenbaum, as he is now attempting to avoid before this Court.

**7.** Judge Gesell dismissed Stone's complaint with prejudice, finding that, "It would also perpetuate the fraud to seriously honor his present contentions, which contradict prior litigating positions he took [in the Tax Court] to achieve tax and other benefits. It would be the height of inequity to give performance to his ephemeral contract claim and to ignore the rights of creditors who lost money because of his and Rosenbaum's conduct." 729 F.Supp. 869, 871.

**8.** Defendant, in his objections to the Magistrate's Report, appears to believe that the standard for entry of a preliminary injunction is identical to that for entry of summary judgment under Fed. R.Civ.P. 56. Unlike a motion for summary judgment, it is not necessary for the moving party in a preliminary injunction to show that there are no open issues of material fact.

dant without any court-supervised withholding and a judgment is entered against defendant, there is a real risk that plaintiffs will be unable to collect what they are due. Plaintiffs did much of the work for which they now seek compensation over a decade ago, and the failure to be paid over such a period in and of itself creates a hardship. On the other hand, defendant has not identified a similarly imposing hardship if the preliminary injunction is entered. The amount at issue represents only a fraction of the total refund. The money held by the registry will receive interest, and plaintiffs will post a bond to insure against other harm should no judgment, or a smaller judgment, be finally entered against defendant.

 Finally, defendant has pressed before this Court, as he did before the Magistrate, his belief that this preliminary injunction action is simply an attachment action in disguise. The Court agrees with the Magistrate that this is without merit. A preliminary injunction is clearly available to preserve assets for a potential monetary judgment. *Republic of the Philippines v. Marcos,* 806 F.2d 344, 356 (2d Cir.1986). Even absent that clear precedent, plaintiffs would still be entitled to an attachment order under New York State law pursuant to Civil Practice Law and Rules ("CPLR") § 6201. An order of attachment may issue

> [W]here the plaintiff has demanded and would be entitled, in whole or in part, or in the alternative, to a money judgment against one or more defendants, when:
> 1. the defendant is a nondomiciliary residing without the state ...

CPLR § 6201. The party moving for an attachment under CPLR § 6201(1) need only show that he would be entitled to at least some monetary judgment against the defendant. As Circuit Judge J. Edward Lumbard has explained:

> Section 6201 authorizes an attachment for security purposes against New York residents only upon a showing that the defendant is attempting fraudulently to conceal or dispose of his assets. No such showing is required of a plaintiff seeking

an attachment against a nondomiciliary residing without the state.

*ITC Entertainment, Ltd. v. Nelson Film Partners,* 714 F.2d 217, 223 (2d Cir.1983). Defendant is a citizen of the State of Missouri and is resident in that state, and thus fits within the ambit of the law. Amended Complaint ¶ 3, Answer to Amended Complaint ¶ 3. Further, it should be noted that the property covered by the preliminary injunction in this case is not without connection to the action. The $5 million tax refund is being paid in large part as a result of work performed by plaintiffs before the Special Trial Judge and the Tax Court.

The Court finds, after a thorough *de novo* review of the matters now before it, that the Magistrate's actions in this case were proper and appropriate. A preliminary injunction should issue in this case, and is appropriate in this matter. Further, even if a preliminary injunction were unavailable, the remedy sought by plaintiffs would be appropriate under the New York law of attachment.

While the Court does find that the balance of the hardships weighs heavily toward plaintiffs, it does believe that defendant could be harmed to some extent by the entry of this preliminary injunction. Accordingly, the Court will require that a nominal bond be posted by plaintiffs during the period of the injunction. The Court does not believe that an inquest-type proceeding is necessary to determine the bond, due to the record of the prior proceedings before the Court. A bond of $10,000 is sufficient in this case. The Court will not place plaintiffs in the position of guaranteeing substantial returns on speculative investments by defendant.

Finally, the Court agrees with the Magistrate's determination of the amount of the tax refund to be subject to the preliminary injunction. Plaintiffs have made a substantial showing regarding their work under the contingency arrangement, for which they demand $793,000. They also claim $56,000 for representation of defendant's wife. The Court agrees with the Magistrate that there has not been a sufficient

showing on the latter amount to justify a preliminary injunction on this amount. The Court further agrees that some offset of the amount under the contingency agreement is appropriate for the fees paid to new counsel for defendant after Gelfand's death. After a review, the Court finds no reason to disturb the conclusion of the Magistrate that there should be an offset of $125,000. Accordingly, the Court finds that a preliminary injunction should be granted in the amount of $668,000.

CONCLUSION

For the reasons stated above, the Court adopts the Report and Recommendation of Magistrate Naomi Reice Buchwald dated September 29, 1989. In connection with the adoption of that Report,

IT IS ORDERED THAT:

1) Defendant is to send by certified mail, return receipt requested, a copy of this Opinion & Order to the United States Internal Revenue Service. This mailing should be completed within seven (7) days of the date of this Opinion & Order. Proof of receipt of this Opinion & Order by the IRS should be filed with this Court within twenty (20) days of the date of this Opinion & Order;

2) FURTHER, defendant is to notify, in writing, plaintiffs by personal service, and this Court and Magistrate Buchwald by messenger or by certified mail, of the release of the refund resulting from the final judgment in case No. 5311–72 before the United States Tax Court. This notification must be made within twenty-four (24) hours of the release of the refund by the Internal Revenue Service.

3) FURTHER, Defendant is, immediately upon receipt of the refund from the Internal Revenue Service as a result of the final judgment of the United States Tax Court in case No. 5311–72, to deposit $668,-000 of that amount in the registry of the Clerk of the Court for the Southern District of New York;

4) FURTHER, that upon deposit by defendant of $668,000 within the registry of this Court, plaintiff shall post a bond in the amount of $10,000 with the clerk of this Court;

Failure to abide by this order will result in sanctions being imposed against the party violating the order. The party committing the violation will also be liable for the costs of the complying party.

The references of this action to Magistrate Naomi Reice Buchwald shall remain in effect.

SO ORDERED.