Julius SEIDE as Trustee of the Printers' League–Pressroom Unions' Pension Fund; as Chairman and Trustee of the New York Pressroom Unions–Printers' League Welfare Trust Fund; as Chairman and Trustee of the Pressroom Unions–Printers' League Income Security Annuity Fund; as Chairman and Trustee of the Printing & Graphic Communications Union Local No. 51–Printers' League Education, Relocation and Supplemental Unemployment Benefits Fund, and as Chairman and Trustee of the Printers' League–Pressmen's Local 51 Vacation Fund, Plaintiffs,

v.

CREST COLOR, INC., Daron Printing Corporation, John P. Bifone, a/k/a John P. Bifone, Jr., a/k/a John Bifone, Jr.; John F. Bifone, a/k/a John F. Bifone, Sr., a/k/a John Bifone, Sr., and John Doe(s), Defendants.

No. 93 Civ. 3439 (LMM).

United States District Court,
S.D. New York.

Nov. 1, 1993.

Joshua E. Bienstock, Lilly & Bienstock, Garden City, NY, for plaintiffs.

Roger S. Haber, Kraditor, Haber & Bienstock, New York City, for defendants.

## MEMORANDUM AND ORDER

McKENNA, District Judge.

Plaintiff Julius Seide, in his various fiduciary capacities as Trustee and/or Chairman and Trustee of the above-captioned employee benefit plans (the "Funds"), commenced this action on May 21, 1993. The Complaint alleges failure to make required contributions and reports to the Funds in violation of Section 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1145, and states claims arising under ERISA Section 502(a)(3) and (e)(1), 29 U.S.C. § 1132(a)(3) and (e)(1); Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185; and Section 630 of the New York Business Corporation Law of 1961, N.Y.Bus.Corp.Law § 630 (McKinney 1986). Plaintiff applied to this Court on May 28, 1993, for an Order pursuant to Rule 65 of the Federal Rules of Civil Procedure enjoining Defendants Crest Color, Inc. ("Crest" or the "Company"), Daron Printing Corporation ("Daron"), John Bifone, Jr., and John Bifone, Sr., from selling, transferring, or disposing of assets whose value might be applied toward the Funds' deficiencies. On June 3, 1993, by Order to Show Cause, and again on July 21, 1993, this Court heard arguments from counsel on whether such an injunction should issue. At the latter hearing, the parties agreed that Defendants would not sell Crest

and/or Daron and/or substantially all of the assets of these entities without five days written notice to Plaintiff pending this Court's decision on the Plaintiff's application for temporary injunctive relief.

For the reasons stated below, Plaintiff's motion is granted, and a preliminary injunction will issue.

*Background*

The case at bar is the most recent in a series of actions arising out of collective bargaining and statutory relationships between Crest and the Funds. Crest is a New York corporation, with its principal place of business at 180 Varick Street in New York City, and is engaged in the printing business. Daron, also incorporated in New York, is located at the same address and is also in the printing business. Defendants claim that Crest is primarily a printer, while Daron is primarily a printing brokerage company. The parties agree that John Bifone, Jr., is the president and a director of both companies; that he also serves as the Treasurer of Daron; and that his father, John Bifone, Sr., serves as Vice President and Secretary of Daron. There is a discrepancy between the parties' contentions as to whether John Bifone, Sr., is or was at one time an officer and director of Crest. At least as of June 16, 1993, according to his sworn affidavit, Defendant Bifone, Jr., was the only officer and director of Crest. Defendant Bifone, Jr., is the majority shareholder of Daron, and his father, John Bifone, Sr., and brother, Pat Bifone, are the minority shareholders. Crest is owned by West Shore Superette, Ltd. ("West Shore"), a New York corporation. Plaintiff alleges, without any support in the record, that West Shore is another interest of the Bifones. Defendants have not responded to Plaintiff's discovery requests seeking to identify the owners of West Shore.

On September 18, 1992, February 24, 1993, and April 8, 1993, judgments were obtained in Federal court against Crest for failure to make required contributions and related payroll reports to the Funds. Crest did not oppose any of these actions. An Affidavit of Judgment by Confession sworn to by John Bifone, Jr., was entered as a judgment against Crest in New York State Supreme Court on September 10, 1992. Upon obtaining these judgments, Plaintiff Funds attached several Crest bank accounts and thereby obtained approximately $18,000 in partial satisfaction of amounts owed.

When Plaintiff attempted to satisfy the outstanding judgments by executing on all printing presses located at the Crest facility, it discovered that they were leased in the name of Daron. Plaintiff also claims that other equipment located at the Crest facility is owned and/or leased by Daron. The Company claims to have made periodic payments to the Funds over the past year.

Notwithstanding the attachments and alleged payments, Defendant Crest remains liable for outstanding amounts owed to the Funds. Both Plaintiff and Defendants are in agreement that the judgments obtained against Crest to date total $176,062.43, exclusive of interest.[1] In addition, Plaintiff asserts that since obtaining the judgments, additional sums, amounting to . $52,000, have accrued to the Funds (as of May 21, 1993).

After Crest notified Plaintiff, in his capacity as President of Local 51 of the Graphic Communications Union, of its intent to sell its remaining assets (which apparently include only the Company's name and good will), Plaintiff, alleging that Daron is the alter ego of Crest and is therefore jointly and severally liable for Crest's obligations to the Funds, applied to this Court seeking to enjoin the sale of Crest, Daron and all or substantially all of the assets of both companies.

*Legal Standard Governing Preliminary Injunctive Relief*

The Second Circuit has recently reiterated the well known rule that a party is entitled to a preliminary injunction only if it establishes "(1) irreparable harm and (2) either (a) likelihood of success on the merits, or (b) sufficiently serious questions going to the merits to make them fair ground for litigation, plus a balance of hardships tipping decidedly to-

---

1. In their Answer, Defendants deny the allegation of this amount, but nevertheless rely on this amount in their Memorandum to this Court. Def.'s Mem.Opp.Pl.'s Mot.Inj.Rel. at 5, 7.

ward the party requesting preliminary relief." *ICN Pharmaceuticals, Inc. v. Khan*, 2 F.3d 484, 490 (quoting *Plaza Health Lab., Inc. v. Perales*, 878 F.2d 577, 580 (2d Cir. 1989)); *see also Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 972 (2d Cir.1989); *Citibank, N.A. v. Nyland (CF8) Ltd.*, 839 F.2d 93, 97 (2d Cir.1988); *American Cyanamid v. Campagna Per La Farmacie*, 847 F.2d 53, 54–55 (2d Cir.1988); *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (1979).[2]

### 1. *Irreparable Injury*

Whether an irreparable injury may be prevented thereby is the "linchpin" in judicial determinations concerning the issuance of preliminary injunctive relief. *Emons Industries, Inc. v. Liberty Mut. Ins. Co.*, 749 F.Supp. 1289, 1291 (S.D.N.Y.1990) (quoting *Buckingham Corp. v. Karp*, 762 F.2d 257, 262 (2d Cir.1985)). "Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered." *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 75 (2d Cir. 1985) (quotations and citations omitted). "To establish irreparable harm, plaintiffs must demonstrate 'an injury that is neither remote nor speculative, but actual and imminent.'" *Tucker*, 888 F.2d at 975 (quoting *Consolidated Brands, Inc. v. Mondi*, 638 F.Supp. 152, 155 (E.D.N.Y.1986)). In addition, "'[a] monetary loss will not suffice [for a showing of irreparable harm] unless the movant provides evidence of damage that cannot be rectified by financial compensation." *Tucker*, 888 F.2d at 975 (citations omitted).

Defendants argue that because the ultimate remedy Plaintiff seeks is money damages, injunctive relief is inappropriate. This argument is unsupported by an attentive reading of the case law. Defendants conflate the issues of whether a harm may be *monetized* and whether a money *judgment* standing by itself will be sufficient to provide a movant with relief. As courts have made clear, while "as a general rule ... a party may not obtain injunctive relief where it is claiming a loss that can be adequately remedied by an award of money damages," *Feit & Drexler, Inc. v. Green*, 760 F.2d 406, 416 (2d Cir.1985), "preliminary injunctions are proper to prevent a defendant from making a judgment uncollectible." *Republic of Philippines v. Marcos*, 806 F.2d 344, 356 (2d Cir.1986), *cert. dismissed*, 480 U.S. 942, 107 S.Ct. 1597, 94 L.Ed.2d 784 (1987), *and cert. denied*, 481 U.S. 1048, 107 S.Ct. 2178, 95 L.Ed.2d 835 (1987). *See also Feit & Drexler*, 760 F.2d at 416 ("even where the ultimate relief sought is money damages, federal courts have found preliminary injunctions appropriate where it has been shown that the defendant intended to frustrate any judgment on the merits by transferring its assets out of the jurisdiction"); *Gelfand v. Stone*, 727 F.Supp. 98, 100 (S.D.N.Y.1989) ("A preliminary injunction may issue to preserve assets as security for a potential monetary judgment where the evidence shows that a party intends to frustrate any judgment on the merits by making it uncollectible. Such a demonstration of intent to frustrate a judgment will satisfy the requirement for a preliminary injunction of a showing of irreparable harm" (citations omitted)).

In the case at bar, Plaintiff has already won several judgments that it has been unable to collect. In fact, Defendants admit that Crest's obligations to the Funds have not been satisfied. Def.'s Mem.Opp.Pl.'s Mot.Inj.Rel. at 3. Thus, Plaintiff's concerns—that with the sale of Crest its hope for any future collection would disappear—is bona fide and not, as Defendants contend, remote. Moreover, Defendant Crest has done nothing to show that it has any plan or means to satisfy its obligations should a sale of Crest proceed. Under these circumstances, the disappearance of Crest's "last asset of any value," *id.* at 3, would constitute an irreparable loss to the Funds. Likewise, the sale of Daron's assets, if the Funds have

---

**2.** Defendants, citing *New York State Nat'l Org. for Women v. Terry*, 886 F.2d 1339 (2d Cir.1989), suggest that injunctive relief has traditionally been available only to protect constitutional interests. Def.'s Mem.Opp.Pl.'s Mot.Inj.Rel at 6. The Court finds this proposition wholly without substance.

a valid claim against them, would also result in an irreparable injury to the Funds.

### 2. Likelihood of Success on the Merits

Plaintiff asserts a likelihood of success on the merits based on its prior successes in obtaining judgments against Crest. Mem. Supp.Pl.'s App.Order Enj.Def.'s Sale, Transf. Disp.Assts. at 14. However, this is not necessarily true with respect to Daron, against the sale of whose assets the injunction is also sought. Prior judgments against Crest in and of themselves do not demonstrate a likelihood of success on the merits as to Daron; Plaintiff's "alter ego" allegations as to Daron are new and distinct from those already adjudicated.

■ The alter ego of a party required to make trust fund contributions may be a liable party under ERISA. *See, e.g., Sasso v. Cervoni,* 985 F.2d 49, 51 (2d Cir.1993) (alter ego status is a basis for imposition of liability for corporate ERISA obligations), *cert. denied,* — U.S. ——, 113 S.Ct. 2964, 125 L.Ed.2d 664 (1993); *Leddy v. Standards Drywall, Inc.,* 875 F.2d 383, 387 (2d Cir.1989) (corporate officers may be personally liable for unpaid benefit-fund contributions where officers and company are "alter egos"); *Goldberg v. Colonial Metal Spinning and Stamping Co., Inc.,* 1993 WL 361672 (S.D.N.Y. Sept. 14, 1993) (corporate alter ego and individual officers and shareholders liable for delinquent contributions). *Cf. Lowen v. Tower Asset Management, Inc.,* 829 F.2d 1209, 1220–21 (2d Cir.1987) (related corporate and individual defendants liable for violation of ERISA fiduciary duties).

However, in order to decide whether Plaintiff's alter ego allegations are either "likely to succeed on the merits, or present sufficiently serious questions going to the merits to make them fair ground for litigation," this Court

must, as an initial matter, determine whether to apply a federal or state alter ego test.

■ At the outset the Court notes that ERISA contains extraordinarily broad pre-emption language. The statute displaces all state law that even "relates to" employee benefit plans.[3] *See, e.g., Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 136, 111 S.Ct. 478, 482, 112 L.Ed.2d 474 (1990) (quoting *FMC Corp. v. Holliday,* 498 U.S. 52, 56, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990) (" 'The pre-emption clause is conspicuous for its breadth' ")). Moreover, "the Supreme Court has repeatedly acknowledged the province of the courts to fashion a 'federal common law of rights and obligations under ERISA-regulated plans.' " *Goldberg,* 1993 WL 361672 at *5 (quoting *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 110, 109 S.Ct. 948, 953, 103 L.Ed.2d 80 (1989) (citations omitted)). Not surprisingly, these broad principles have been applied to the question of determining alter ego status. *See, e.g., Goldberg,* 1993 WL 361672 at *4 ("Piercing a corporate veil in an action arising under ERISA 'is a question of federal substantive law, though state law may be used as a reference guide' ") (quoting *Trustees of UIU Health and Welfare Fund v. New York Flame Proofing, Inc.,* 649 F.Supp. 843, 847 (S.D.N.Y.1986), *rev'd on other grounds,* 828 F.2d 79 (1987)).[4]

As a general matter, "the Supreme Court has consistently refused to give effect to the corporate form where it is used to defeat legislative purposes." *Lowen,* 829 F.2d at 1220 (quoting *First National City Bank v. Banco Para El Comercio Exterior de Cuba,* 462 U.S. 611, 630, 103 S.Ct. 2591, 2601, 77 L.Ed.2d 46 (1983)).

In *Lowen,* an ERISA matter in which related corporations and common individual owners were held personally liable for losses from investments involving prohibited transactions, the court noted that federal law

---

**3.** ERISA Section 514(a), 29 U.S.C. § 1144(a), states in part:

Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan described in section 1003(a) of this title and

not exempt under section 1003(b) of this title. (emphasis added).

**4.** Thus, Defendants' exclusive reliance on *Wm. Passalacqua Builders v. Resnick Developers,* 933 F.2d 131 (2d Cir.1991), and other cases employing New York law in addressing the alter ego question, is misplaced.

"gives less deference to the corporate form than does the strict *alter ego* doctrine of state law," and that "[c]ourts have without difficulty disregarded form for substance where ERISA's effectiveness would otherwise be undermined," *id.* at 1220. *See also Lowen v. Tower Asset Management, Inc.,* 653 F.Supp. 1542, 1551 (S.D.N.Y.1987), *aff'd,* 829 F.2d 1209 (2d Cir.1987) ("Although no explicit ERISA provisions pertain to piercing the corporate veil, the remedial thrust of ERISA is not to be frustrated by meticulous emphasis on the corporate form"); *Alman v. Danin,* 801 F.2d 1, 3 (1st Cir.1986) ("[t]he general rule adopted in the federal cases is that a corporate entity may be disregarded in the interests of public convenience, fairness and equity" (quotations and citations omitted)).

In this District, Judge Keenan recently explained in the course of adjudicating an ERISA matter with strikingly similar facts, that "[t]his less deferential [federal] inquiry [into the weight to be attached to the corporate form] can be attributed to a statutory format which was intended 'to remove jurisdictional and procedural obstacles which in the past appear to have hampered … recovery of benefits due to participants who were otherwise being deprived of benefits due them.'" *Goldberg,* 1993 WL 361672 at *5 (quoting S.Rep. No. 127, 93 Cong., 2d sess., *reprinted in* 1974 U.S.Cong. & Admin.News 4639, 4838, 4871).[5]

█ Although there is "no litmus test in the federal courts governing when to disregard corporate form," *Alman,* 801 F.2d at 3, the Second Circuit has articulated the purpose of, and factors to be considered under, a federal alter ego test. "The alter ego doctrine is designed to defeat attempts to avoid a company's union obligations through a sham transaction or technical change in operations. The key factors to be weighed in an alter ego analysis are whether the two enterprises have substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership." *Local 1, Amalgamated Lithographers v. Stearns & Beale,* 812 F.2d 763 (2d Cir. 1987) (quoting *Goodman Piping Products, Inc. v. NLRB,* 741 F.2d 10, 11 (2d Cir.1984) (other citations omitted)).

█ Employing these factors, the Court finds that many of the facts alleged in the instant case create, at the very least, serious questions going to the merits of each element of the alter ego question. First, the two corporate defendants share the same president; other management personnel at Daron are close relatives of the common president. While Defendants assert that Crest and Daron have only "a single common director," Aff. of John Bifone, Jr. ¶ 26, Crest has *only* one director. Second, both companies are engaged in the printing industry. Third, Crest's key pieces of operating equipment, the printing presses, are controlled by Daron. Moreover, as alleged by Plaintiff, Daron holds the leases to Crest's presses without having received any consideration in exchange, a transaction which—control issues aside—on its face indicates the absence of arms-length dealings between the two companies. Fourth, the companies are located at the same address. Fifth, the companies allegedly share a common receptionist and telephone operator.[6] Sixth, Plaintiff alleges that the ownership of the two Defendant corporations is intertwined and that Defendants have failed to comply with discovery requests on this issue.[7] While an unsupported allegation could not normally suffice to create a "serious question" for litigation, the

---

5. In *Goldberg,* where obligations for delinquent contributions to employee benefit funds were at issue, the court, in granting a motion for summary judgment, held corporate alter egos liable and pierced the corporate veil as to individual defendants.

6. If this is in fact the case, the truthfulness of affidavits submitted to this Court on the part of Defendants' counsel Haber and Defendant Bifone, Jr., would be very much called into question. Both parties swore to the facts that (1)

"Crest has *always* had its own … payroll," Haber Aff. ¶ 21; Bifone, Jr. Aff. ¶ 24 (emphasis in originals); and (2) "[t]he only nexus between Crest and Daron rests in a single common director, and a leasing arrangement for equipment and space." Haber Aff. ¶ 23; Bifone, Jr. Aff. ¶ 26. If the two companies have common employees, then the statements above would appear to be misleading.

7. *See* Letter to L. Knife from J. Bienstock, July 8, 1993.

Court finds that Defendants' withholding of pertinent information has kept the question of the ownership of Crest very much alive. Thus, on the record currently before it, as to the question of Daron's alter ego liability, this Court finds that there are at least "sufficiently serious questions going to the merits to make them fair ground for litigation." *ICN Pharmaceuticals*, 2 F.3d at 490. In view of the outstanding judgments already entered against Crest, the Court finds a likelihood of success on the merits as to Crest.

Supplemental to employing a federal standard, as noted *supra*, a court may use state law as a "reference guide" in addressing the veil piercing question. In addition, the Supreme Court has stated, in undertaking a choice of law inquiry concerning the implementation of a federal statute, a court must consider to what extent application of a federal rule will disrupt commercial relationships predicated in state law. *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 728–29, 99 S.Ct. 1448, 1458–59, 59 L.Ed.2d 711 (1979). Heeding this directive, the Court notes that New York Business Corporation Law § 630, already a factor in New York commercial relationships, provides for shareholder liability for benefits owed to employees.[8] Pre-emption issues aside, on the question of the extent that the corporate form may protect a party from liability for employee compensation obligations, the statute evidences New York norms consistent with a possible eventual finding of alter ego liability in this case.

### 3. *Balance of the Hardships*

A "balance of the hardships tipping decidedly toward the party requesting preliminary relief" must be shown only when a movant fails to sufficiently demonstrate a likelihood of success on the merits, and can instead make out only "sufficiently serious questions going to the merits to make them fair ground for litigation." *ICN Pharmaceuticals*, 2 F.3d 484 at 490. Without deciding that Plaintiff's allegations as to Daron fail to meet the higher hurdle, this Court nonetheless finds that the greatest potential hardship stands to be borne by employees represented by Plaintiff, who could face the prospect of the loss of significant value of their retirement income should the remaining assets of Crest or Daron disappear. Defendants imply that an asset sale would generate proceeds that would be available to the Funds. Def.'s Mem.Opp.Pl.'s Mot.Inj.Rel. at 10. However, in the absence of any affirmative obligation on the part of the owners of Crest and certain Crest equipment and/or leases (West Shore and Daron, respectively), which Defendants assertedly do not recognize, there is no reason to believe that the proceeds of such a sale would accrue to the Funds.

The Defendants, on the other hand, have not demonstrated that temporarily enjoining the sale of Crest would work a hardship to them. Defendants state that if they are enjoined from disposing of Crest, they will have to cease doing business entirely. *Id.* The Court finds this argument unpersuasive; by definition, if the Defendants sell Crest, they will cease conducting that printing business. As to Daron, the Defendants have presented no evidence to this Court indicating that the company would be imperiled by a Court order placing the proceeds from any asset sales into an escrow account pending settlement or adjudication of the merits of the case at bar.

### *Summary and Order*

For the foregoing reasons, the Court finds that Plaintiff has met its burden of demon-

---

8. Section 630 of the New York Business Corporation Law provides in part:
   (a) The ten largest shareholders, as determined by the fair value of their beneficial interest as of the beginning of the period during which the unpaid services referred to in this section are performed ... shall jointly and severally be personally liable for all debts, wages or salaries due and owing to any of its laborers, servants or employees other than contractors, for services performed by them for such corporation....

(b) For the purposes of this section, wages or salaries shall mean all compensation and benefits ... These shall specifically include but not be limited to salaries, overtime, vacation, holiday and severance pay; employer contributions or payments of insurance or welfare benefits; employer contributions to pension or annuity funds ...
N.Y.Bus.Corp.Law § 630 (McKinney 1986).

strating that the sale or other disappearance of Crest's and/or Daron's assets would constitute an irreparable injury to the Funds. In light of prior judgments handed down concerning Crest's delinquency in making required contributions to the Funds, the Court finds that Plaintiff has demonstrated a likelihood of success on the merits as to Crest; as to Daron, the Court finds that Plaintiff has at least shown sufficiently serious questions going to the merits of the issue of alter ego liability to make them fair ground for litigation. In addition, the Court finds that the balance of hardships on the question of the issuance of an injunction tips decidedly toward the Plaintiff. Therefore, Defendants, their agents, servants, employees and all persons acting in their behalf are hereby enjoined from, directly or indirectly, transferring, selling, or in any other way disposing of the business and/or assets of Crest and/or Daron without the prior consent of the Plaintiff; provided, however, that such consent shall not be withheld except in the event that Plaintiff in good faith believes such transfer, sale, or disposition to be fraudulent or not to be the result of an arms-length transaction. It is further Ordered that any proceeds from any sale of assets by any Defendant executed pursuant to this Order be deposited in escrow with the Clerk of this Court (or, upon Plaintiff's consent, in some other account) until the relative rights of Plaintiff, Defendants, and other creditors are adjudicated or otherwise agreed to by the parties.

Settle injunction (through the Orders and Appeals section of the Clerk's office) on five days' notice, with suggestions as to bond.

The parties will complete discovery by March 31, 1994. The case is referred to Magistrate Judge Buchwald for general pretrial purposes.

SO ORDERED.